# Montgomery *v.* The State.

## *Murder.*

(Decided May 18, 1909. 49 South. 902.)

1. *Homicide; Shelter; Abandonment; Self Defense.*—Where the tendencies of the evidence were that while defendant was in his son's house and after being threatened by the deceased, went outside and found the deceased in a threatening attitude, and shot and killed him, charges asserting that if the defendant left the house, which was a place of safety, and went into the yard, and there came upon deceased unexpectedly, or as deceased raised his gun to shoot defendant, and defendant then shot and killed deceased, he could not rely on self defense, were erroneous and improperly given.

2. *Homicide; Instructions.*—Where there was no evidence that defendant was leaving the place of the homicide at the time of the killing, a charge asserting that if defendant left the house of his son, and as he was leaving the place deceased attempted to shoot him, defendant could still defend himself, if he was without fault, was abstract and pretermitted other evidence in the case that defendant left the house to shoot deceased.

3. *Same.*—A charge asserting that a man may leave his house to avoid a difficulty, and does not leave it for the purpose of encountering danger at the hands of his adversary, is incomplete and unintelligible.

4. *Same.*—A charge authorizing the acquittal of accused though he left the house in search of deceased, and for the purpose of engaging in a difficulty with him, is properly refused.

5. *Same; Self Defense; Imminent Peril.*—A charge asserting that a man may strike in self defense when attacked, and that if defend-

ant was free from fault in bringing on the difficulty and was lawfully on the premises of his son, doing no more than walking away from the direction where deceased was last seen and came on decease holding a gun on defendant in a threatening attitude, then defendant could kill deceased, if from all the surroundings and acts of the deceased, a reasonable man would have been led to the believe that his life was in imminent peril, and there was no open and reasonable way of escape, fails to hypothesize an honest belief on defendant's part that he was in imminent peril.

6. *Same.*—A charge asserting that if accused was free from fault in bringing on the difficulty, and there was no reasonable mode of escape when he came on deceased, without great danger of bodily harm, and the defendant had a right by invitation or permission to be where he was and a reasonable man would have believed from the acts of deceased that his life was in peril, then defendant could shoot and kill deceased if necessary, was elliptical and failed to hypothesize an honest belief in the imminency of peril.

7. *Same.*—A charge asserting that defendant was not required to remain in the house, if, in his reasonable judgment, he would be safer in going out to some other part of the premises, and if, in attempting to seek refuge, defendant came upon deceased unexpectedly, he was not prevented from setting up the plea of self defense, and if the jury found from the evidence that the defendant in seeking a safer place than the dwelling was not seeking a meeting with deceased, and was not in fault in bringing on the difficulty, then the jury should acquit, is patently erroneous.

8. *Same.*—A charge asserting that if the evidence convinced the jury that deceased was a man of bad character, blood-thirsty, turbulent and determined, especially when drinking, and the defendant knew of his character, and at the time of the killing deceased was drunk, or had been drinking heavily, then the law did not require one having the knowledge of such character to wait, so long to shoot in self defense as he would be required to do if deceased did not have such character, was misleading and argumentative.

9. *Same.*—A charge asserting that if deceased called for his gun and threatened to kill defendant, and then appeared at the window of the room in which defendant was, with his gun pointing into the room in a manner indicating an intention to fire, and defendant left and went out of the house in an opposite direction from deceased, and deceased went around the house and met defendant and raised his gun in a manner indicating an intention to shoot defendant, creating in defendant's mind a reasoable belief that it was necessary to shoot deceased to save his own life, and defendant was without fault, then he was not guilty, if there appeared at the time no other way of escape open to defendant, was not only involved and confusing, but pretermitted evidence in the case, that defendants purpose in leaving the house was to find deceased and engage him in combat.

10. *Same; Duty to Retreat.*—A charge asserting that where there is an assault manifestly felonious in its purpose and forcible in its nature, as in murder, the party attacked is under no obligation to retreat, but may, if necessary, stand his ground and kill his adversary, is not a proper statement of the law.

11. *Same.*—Where there was an absence of evidence that the killing was done in repelling a trespass, either in or on the dwelling from

[Montgomery v. The State.]

which the defendant emerged just before the homicide, a charge asserting that a guest in a dwelling house is entitled to the protection the law affords the owner or more permanent occupant, and he may repel trespassers in and on the house and repel assault as if he was under his own roof, was inapplicable to the evidence, and properly refused.

12. *Same.*—A charge asserting that the law guards with jealousy and vigilance the peace and security of the dwelling, extending to it a degree of protection, the equivalent of that extended to the person, and that a trespass on it or an invasion of its quiet enjoyment is more than a mere trespass on the property, is but an argument and properly refused.

13. *Same.*—A charge asserting that under the law defendant had a right to defend his son's home if he was there as a guest, was not only abstract, but assumed that defendant was defending his son's house.

14. *Same.*—A charge asserting that if defendant was in the house of his son and decedent was attempting to shoot through the window, and the defendant left the house on the opposite side to leave the place and get away from deceased, and avoid a difficulty, and defendant was pursued by deceased with a gun with the intent to kill him, then the defendant could strike in self defense if he was without fault, and that one who intrudes or trespasses on a dwelling with a felonious intent or in such a manner as to create a reasonable belief in the mind of the occupant that such is his purpose may be killed and the homicide will be self defense, is objectionable as being abstract.

15. *Same.*—A charge asserting that if defendant left the house, and was near the well when deceased attacked him with a gun with the intent to take his life, defendant would be entitled to defend himself if he was without fault in bringing on the difficulty and there was no mode of escape, pretermitted consideration of the testimony in the case indicating that defendant was seeking deceased.

16. *Same; Evidence; Threats.*—Where there was evidence showing that defendant had stated that if certain persons, including the deceased, bothered him, he would kill some of them, as matter preliminary to the proof of such threat it was not objectionable to show that defendant was carrying a gun for another.

17. *Same.*—Evidence that defendant had said that if certain persons, composing a class to which deceased belonged, bothered him, he would kill some of them, was not objectionable as for indefiniteness.

18. *Same.*—Where the state made no effort to show that the deceased bore a good character but it developed on cross examination of a witness that deceased was reputed to be a dangerous and bloodthirsty man, it was not competent for the defendant to prove admissions made by the deceased that he lay in wait for another and went to his house to kill him.

19. *Same; Intoxication.*—Whether defendant was drunk at the time of the homicide is admissible in evidence.

20. *Charge of Court; Degree of Proof.*—A charge which required proof of defendant's guilt clearly, fully, convincingly and to a moral certainty exacts too high a degree of proof.

21. *Same; Covered by Those Given.*—It is not error to refuse written instructions substantially covered by written instructions given.

22. *Same; Asserting no Proposition of Law.*—Charges asserting that there is no evidence of certain facts, not only invade the province of the jury but assert no proposition of law.

23. *Same; Reasonable Doubt.*—A charge asserting that the jury should find the defendant not guilty unless the evidence against him was such as to exclude to a moral certainty every hypothesis but that of guilt, is inapt and erroneous as the requirements are to the exclusion of every reasonable hypothesis of guilt.

24. *Same; Degree of Proof.*—A charge asserting that before the jury could convict the defendant, they must be satisfied to a moral certainty not only that the evidence was consistent with defendant's guilt, but is wholly inconsistent with every other rational conclusion, and unless the jury were so convinced that they would each venture to act on that decision in matters of the highest concern and importance to his own interest, they should acquit, is not only argumentative, but otherwise erroneous.

25. *Trial; Reception of Evidence; Expected Answer.*—Where a question is susceptible of being answered by matter wholly immaterial to the issue, the court will not be put in error for sustaining objection thereto, unless the court is advised as to the answer expected thereto.

26. *Same; General Objection.*—Where a question calls for competent evidence, it is not open to a general objection.

(Denson, J., dissents in part.)

APPEAL from Lawrence Circuit Court.

Heard before Hon. D. W. SPEAKE.

Wess Montgomery was convicted of murder, and he appeals. Reversed and remanded.

The facts are sufficiently stated in the opinion of the court. In his oral charge to the jury the court said, among other things: "If the jury find from the evidence that the defendant was in the cook room of his son, Hubert Montgomery, when Dave Pruett, the deceased, appeared at the window of said cook room and poked his gun through the window, if he did poke it through the window, and the defendant went from the cook room into the big or main room, and out the shed room on the north side of the house, and out into the yard, 10 or 12 feet away, to the north of the building and there came upon Dave Pruitt, the deceased, unexpectedly, and even if deceased raised his gun to shoot defendant, and defend-

[Montgomery v. The State.]

ant shot and killed Dave Pruitt, the defendant could not set up the plea of self-defense because the law says the defendant had no right to leave the place of safety he was at in the house of his son, Hubert Montgomery."

Further charging the jury orally, the court said: Gentlemen of the jury, if you find from the evidence that the defendant left the residence of Hubert Montgomery after the deceased appeared with a gun at the window, if he did so appear, and that defendant came in contact with deceased outside of the house and killed him, then I charge you the defendant cannot invoke the doctrine of self-defense. If you believe from the evidence that the defendant was in the house of Hubert Montgomery, and that Dave Pruitt went out of the house and called for his gun, and threatened to kill the defendant, then it was the defendant's duty to remain in a place of safety; and if the defendant did leave the house and came in contact with Dave Pruitt, who was attempting to shoot him with a gun, then I charge you that the defendant would not be without fault, as it was his duty to remain in a place of safety. I further charge you that, while the defendant was in the house of his son, the said house was his castle, and he had a right to defend himself if assaulted therein; but I charge you he had no right to leave his castle, and if he did so, and came upon Dave Pruitt, who was attempting to shoot him with a gun, then I charge you that the defendant would not be without fault, for the reason that he had no right to leave his castle. I further charge you that if you find from the evidence that the defendant was in the residence of his son, and the deceased appeared at the window with his gun, manifesting an intention of shooting into the house, and that the defendant left the house and went into the back yard and came upon the deceased with a gun in his hand, indicating by his manner that he would shoot the

defendant, and the defendant fired and killed the deceased, then I charge you that the defendant cannot invoke the doctrine of self-defense, for the reason that the law required him to remain in the house or castle."

The bill of exceptions recites that in connection with this charge, and after exceptions had been reserved thereto, the court stated to the jury that if the defendant, while in his son's house, was in a place of safety, and if he knew it to be a place of safety, it was his duty to remain therein; and if under such circumstances he left the house, and went into the back yard, and came upon Pruitt in the act of shooting him, then, even though it became necessary for him to shoot Pruitt to save his own life, he cannot invoke the doctrine of self-defense, for it was his duty to remain in the house.

Charge A2, given at the request of the state, was as follows: "If you believe from the evidence in this case beyond a reasonable doubt that before the shooting defendant was in the north room of Hubert Montgomery's house, and that such place was safe, and defendant knew it was a safe place, and that he left this place and went into the yard, and there it became necessary to take the life of the deceased to save his own life, then I charge you he cannot set up the doctrine of self-defense."

The following charges were refused to the defendant:

(1) "I charge you that, before you can convict the defendant, you must be satisfied clearly, fully, and conclusively, and to a moral certainty, of defendant's guilt, and if this measure of satisfaction is lacking you should acquit him."

(3) "If defendant left the house and was leaving the place, and Dave Pruitt attempted to shoot him, then I charge you that the defendant still had the right to defend himself, if he was without fault."

Charge 4, being the general affirmative charge.

(5) "Gentlemen of the jury, the evidence in this case does not show that Hubert Montgomery went into the north room before or after the firing of the pistol at the time Dave Pruitt was killed."

(6) "The law is that a man may leave his house to avoid a difficulty, and does not leave it for the purpose of encountering danger at the hands of his adversary."

(7) "I charge you that there is no evidence in this case that Wess Montgomery left the house of his son to encounter Dave Pruitt on the north side of the house."

(8) "If the jury believe from the evidence in this case that the deceased had but a few moments before the shooting threatened to kill the defendant, and went out to get his gun a few feet away, and returned to where defendant was and poked his gun into the window, where defendant had just before that been standing, and in a well-lighted room, and defendant left said room and went in a direction opposite to where decreased was last seen, and you believe from evidence that defendant drew his pistol as he left the house, and did leave the house with his own pistol, and suddenly and unexpectedly came upon the deceased, and saw deceased present a gun at him, and he believed from his conduct that deceased intended to shoot him, and defendant had no way of escape without greatly imperiling his life, the law says he had a right to shoot and kill deceased, and your verdict should be not guilty."

(9) "I charge you that any man may strike in self-defense when attacked by an enemy, and if the jury believe from the evidence that the defendant was free from fault in bringing on the difficulty in this case, and was on the premises of his son, and had a right to be there, and was doing nothing more than walking away from the direction that deceased was last seen, and suddenly came upon deceased, and deceased was drawing his gun on defend-

ant in a shooting attitude, then I charge that defendant had a right to shoot and kill deceased, if all the surroundings and acts of deceased would have led a reasonable man to believe his life was in imminent peril and there was no open and reasonable way open for the escape of defendant."

(10) "If the defendant was free from fault in bringing on the difficulty, and there was no reasonable mode for his escape when he came upon deceased, without great danger of bodily harm, and defendant had a right by invitation or permission to be where he was, and a reasonable man would have believed from the act of the deceased that his life was in peril, then the defendant had a right to shoot and kill deceased, if necessary, and the jury would find him not guilty."

(11) "The defendant is not required to remain in the house, if in his reasonable judgment he would be safer in going out to some other part of the premises, and if, in attempting to seek such refuge, defendant comes upon the deceased unexpectedly, he is not prevented from setting up the plea of self-defense; and if the jury find from the evidence that the defendant was seeking a safer place than the dwelling, and was not seeking a meeting of the deceased, and was not in fault in bringing on the difficulty, then the jury should acquit the defendant."

(12) "If the evidence convinces the jury that deceased was a man of bad character, that he was bloodthirsty, turbulent, and determined, especially when drinking, and the defendant knew of this character, and the jury further find that at the time of the killing deceased was drunk, or drinking heavily, then I charge that the law does not require one who has knowledge of such character to wait so long to strike in self-defense as he would be required to do if deceased did not have such character."

(13) "If the jury believe from the evidence that Pruitt called for his gun and threatened to kill defendant, that he then appeared at the window of the room in which defendant was, with his gun pointing into the room in a manner indicating an intention of firing into the room, that defendant left the room and went out of the house in an opposite direction from the defendant, that Pruitt went around the house and met defendant and raised his gun in a manner indicating an intention of shooting defendant, and creating in defendant's mind a reasonable belief that it was necessary to shoot Pruitt to save his own life, and that the defendant was without fault, then they should find the defendant not guilty, if there appeared at the time no safe way of retreat open for defendant."

(14) "Where an assault is made which is manifestly felonious in its purpose and forcible in its nature, as in murder, the party attacked is under no obligation to retreat; but he may in such case, if necessary, stand his ground and kill his adversary."

(15) "The law has long been settled that a guest in a dwelling house is entitled to the protection that the law affords the owner or more premanent occupant, and he may repel trespassers in and upon the house, and repel assaults, actual or menaced, as if he were under his own roof and within his own doors."

(16) "The jury should find the defendant not guilty unless the evidence against him is such as to exclude to a moral certainty every hypothesis but that of his guilt of the crime imputed to him."

(17) "The law guards with great jealously and vigilance the peace and security of the dwelling, extending to it a degree of protection the equivalent of that extended to the person. A trespass upon it, an invasion of its quiet enjoyment, is more than a mere trespass upon the property."

(18) "The court charges the jury that they should find the defendant not guilty, unless the evidence against him should be such as to exclude to a moral certainty every hypothesis but that of his guilt of the crime imputed to him."

(19) "I charge you, under the law of Alabama, Wess Montgomery had a right to defend his son's house, if he was there as a guest."

(20) "If the jury find from the evidence that Wess Montgomery did not leave the house of his son for the purpose of encountering Dave Pruitt, but a reasonable man would have left it under the circumstances, either for his protection or to avoid the threatened danger, then I tell you that the law did not require defendant to remain in the house, provided he did not bring on the difficulty, and was not at fault in bringing on the difficulty."

(21) "Before the jury can convict the defendant, they must be satisfied to a moral certainty, not only that the proof is consistent with the defendant's guilt, but that it is wholly inconsistent with every rational conclusion; and unless the jury are so convinced by the evidence of the defendant's that they would each venture to act upon that decision in matters of the highest concern and importance to his own interest, then they must find the defendant not guilty."

(22) "If the defendant was in the house of his son, and Dave Pruitt was attempting to shoot him through the window on the south side of the house, and the defendant left the house on the north side for the purpose of leaving the place, and getting away from Pruitt, and avoiding a difficulty, and the defendant was pursued by defendant with a gun with the intent to kill the defendant, then I charge you that the defendant had a right to strike in self-defense, if he was without fault."

(23) Same as 21.

[Montgomery v. The State.]

(24) "One who intrudes or trespasses upon a dwelling with felonious intent, or in such a manner as to create a reasonable belief in the minds of the occupant that such is his purpose, may be killed, and the homicide will be self-defense."

(25) "If the defendant left the house and was near the well, and Dave Pruitt attacked him with a gun with the intent to take his life, the defendant would be entitled to defend himself, if he was without fault in bringing on the difficulty and there was no safe mode of escape."

The question to the witness Throckmorton, was, "Did you find anything else in the possession of the defendant than the article that you have already named at the time of his arrest?" The question to the witness Wilkerson was if he had heard McKay ask defendant if he was carrying that gun for him, and the answer thereto that he had.

WERT & LYNN, and JAMES JACKSON, for appellant. The court erred in giving charge A.—*Martin v. The State*, 90 Ala. 611. The same is true of Charge B.— *Martin v. The State, supra; Lee v. The State*, 92 Ala. 19. On these same authorities, charges C, D, and E are faulty. The court erred in refusing charge 1 requested by defendant.—*Joe v. The State*, 38 Ala. 422; *Lowe v. The State*, 88 Ala. 8; *Riley v. The State*, 88 Ala. 188. Charge 2 should have been given.—*Sylvester v. The State*, 71 Ala. 26. The same is true of charge 3.—*Lewis v. The State*, 51 Ala. 1. Charge 9 was a proper charge on self defense.—*Jackson v. The State*, 94 Ala. 90, s. c. 77 Ala. 18; *Meredith v. The State*, 60 Ala. 441. On these authorities charge 10 should have been given. Charge 12 asserts a correct proposition.—*deArman v. The State*, 71 Ala. 352; *Karn v. The State*, 100 Ala. 4; *Roberts v.*

*The State,* 68 Ala. 156; *Franklin v. The State,* 29 Ala. 14. Charge 13 should have been given.—See authorities under charge 9. Charge 14 states the law.—*Storey v. The State,* 71 Ala. 336. So does charge 15.—*Crawford v. The State,* 112 Ala. 1. Charge 16 should have been given.— *Gilmore v. The State,* 99 Ala. 154; *Brown v. The State,* 118 Ala. 111. Charge 17 was proper charge. —*Crawford v. The State, supra; Harris v. The State,* 96 Ala. 24; *Christian v. The State,* 96 Ala. 91. Charge 19 is the law.—*Crawford's Case, supra.* Charge 21 should have been given.—*Wharton v. The State,* 73 Ala. 366; *Burton v. The State,* 107 Ala. 114; *Pickens v. The State,* 115 Ala. 42; 118 Ala. 111; 108 Ala. 18. On these same authorities charges 21 and 22 should have been given. Charge 24 should have been given.—*Crawford's Case, supra; Harri's Case, supra; Christian's Case, supra; Lee's Case, supra.* Charge 25 should have been given.—*Martin's Case, supra.* Counsel discuss assignments relative to evidence, but without authority.

ALEXANDER M. GARBER, Attorney General, and THOMAS W. MARTIN, Assistant Attorney General, for the State. Threats made by a defendant against a class to which the deceased belonged, are admissible.—*Harrison v. The State,* 79 Ala. 29; *Andrews v. The State,* 79 Ala. 5; *Morris v. The State,* 146 Ala. 66. It is not clearly shown what answer was expected to the questions propounded to McKay.—*Sloss-S. S. & I. Co. v. Sharp,* 47 South. 279. The court's oral charge was proper.—*Watkins v. The State,* 89 Ala. 82. The first charge refused to the defendant was properly refused.—*Way v. The State,* 46 South. 273. So was the 3rd.—*Morris v. The State, supra; Gilmore v. The State,* 126 Ala. 20; *Ridgell v. The State,* 47 South. 71. The 4th and 5th charges were patently bad. The 6th charge was argumentative.

The 7th charge was abstract.—*Way v. The State, supra.*
The 8th charge was bad for many reasons.—*Lawson v.
The State,* 46 South. 259. The 9th charge was mislead-
ing and confusing.—*Morris v. The State, supra; Gil-
more v. The State, supra.* The 10th charge is faulty.—
*Greer v. The State,* 47 South. 300; *Watkins v. The State,
supra.* The 11th and 12th charges are argumentative.
The 13th charge is imperfest.—*Greer v. The State, supra;
Watkins v. The State, supra.* The 14th and 15th charges
were properly refused on the last authorities cited. The
17th charge was properly refused.—*Lawson v. The State,
supra.* The 21st charge was properly refused.—*Rodgers
v. The State,* 117 Ala. 15; *Amos v. The State,* 123 Ala.
50; *Shirley v. The State,* 144 Ala. 35.

DENSON, J.—Wess Montgomery was indicted, tried,
and convicted, in the circuit court of Lawrence county,
for the crime of murder—the killing of Dave Pruitt.
From the judgment of conviction he appeals, and here
assigns for error rulings of the circuit court on the ad-
missibility of testimony, parts of the oral charge of the
court, and the refusal of the court to give written in-
structions requested by the defendant.

The material facts of the case are without conflict in
the evidence. The homicide occurred about dark, on the
28th of August, 1908, at the home of Hubert Mont-
gomery, a son of the defendant, out behind the smoke-
house, and within the curtilage of the son's dwelling.
Defendant did not reside with his son; but he, together
with deceased, one Coffee, and the son, had gone from
a point in the public road to the son's house a short
time before the killing occurred. The evidence shows
that defendant had taken two or three drinks of whisky,
and that deceased was to some extent intoxicated. Be-
fore starting to the house of Hubert Montgomery the de-

fendant delivered to the deceased a single-barrel shot-gun which he had borrowed from deceased, and deceased carried the gun with him. Defendant carried a 45-cali-ber Colt's revolver. Upon their arrival at the son's home, deceased either left his gun near the front gate, on the south side of the house, or carried it in and laid it on a bed. Defendant stopped on the front porch, but all the others went into the cookroom, on the north side of the house, where Mrs. Hubert Montgomery was prepar-ing supper; that room being lighted by a lamp. De-ceased shoved "some things" back from the edge of the dining table and sat on it. He began talking and used profane language. Coffee reproved deceased for using profane language in the lady's presence. Presently de-fendant appeared in the cookroom, and, remonstrating with deceased for using such language in the presence of his daughter-in-law, told deceased he must either stop it or get out of the house. Deceased remarked that he could get out, and did go out, through the house and by way of the south door. Some testimony tended to show that, as he was passing out, he inquired for his gun and said he would kill defendant—at the time applying a vile epithet to the defendant. Defendant testified that he heard deceased (as he was going out of the door) call for his gun and say: "I will kill Wess Montgomery." In a few moments defendant appeared at the window of the cookroom, and Mrs. Montgomery exclaimed, "Look out, he is coming with his gun; don't let him shoot in here!" At this time defendant "looked and saw deceased pointing a gun in the window at the south end of the cookroom." Defendant went out of the cookroom door, remarking, as he did so, something like, "If that is his game, I will mix with him." Defendant passed out of the house on the north side, opposite where he saw Pruitt with the gun. As he stepped out of the north door of the

house, defendant drew his pistol, walked 10 or 15 feet, and had just passed the well, when he glanced to his right and saw deceased standing on the north side of the smokehouse, in the act of raising his gun towards defendant, and in the attitude of firing. Defendant fired and Pruitt fell. Defendant then walked back to the house and informed his son, who met him, that he had shot Pruitt.

Taking defendant's own version of the transaction, it would seem wholly improbable that defendant left the house for any other purpose than to search for the deceased. In this view, he was chargeable with knowledge of deceased's feelings towards him, and, therefore, if he should find deceased, that an altercation would in all probability, if not inevitably, ensue. Indeed, defendant's own testimony is without conflict to the effect that he went out with the purpose of having an altercation with deceased, or, as he expressed it, to "mix with him." If he had remained in the house, he would, in all probability, not have been liable to molestation by deceased. Conceding that, in the house of his son, he was (under proper circumstances) excused from the doctrine of retreat, and might, while in it, make reasonable resistance to all assaults not provoked by himself, yet no person is permitted by the law to turn his castle from "a shield to a sword," for purposes of "offensive effort against the lives of others;" for, as was tersely said by one of our great judges (McClellan), "it is a shelter, but not a sally port." "If he leaves its shelter to encounter a danger beyond its precincts, he is in no better attitude, before the law, than if he had come from any other place, and voluntarily entered upon a combat, from the peril of which he was secure, but for his own act. It is immaterial that, after he has armed himself and emerged from his house, he encounters a necessity

to kill to save his own life. Such necessity is, in legal contemplation, of his creation, and he cannot justify under a necessity which his own fault and wrong have contributed to produce."—*Watkins' Case,* 89 Ala. 82, 8 South. 134; *Gibson's Case,* 126 Ala. 59, 28 South. 673.

In the light of the testimony, and of the considerations and authorities above adverted to, the writer is of the opinion that while those portions of the oral charge excepted to are not models of perspicuity, and may be misleading, yet, considered in connection with the explanation of the court found on page 52 of the record, they involve no reversible error; and upon the same considerations, he is also of the opinion that there is no reversible error in the giving of charge A2, requested by the solicitor. But Justices SIMPSON, ANDERSON, McCLELLAN, MAYFIELD, and SAYRE are of the opinion, and hold; that the oral charge and charge A2 constitute reversible error.

Treating charges refused to defendant: Charge 1 exacts too high a degree of proof. *Griffith's Case,* 90 Ala. 583, 8 South. 812. Charge 2 has its substantial duplicate in given charge 26. Charge 3 is abstract, there being no evidence in the record that defendant was "leaving the place," and, furthermore, pretermits the evidence tending to show that defendant left the house to seek deceased. Charge 4 (the general affirmative charge) is without foundation in the evidence. Charge 5 and 7 assert no propositions of law.—*Mobile, etc., Co. v. Walsh,* 146 Ala. 290, 40 South. 559; *Johnson's Case,* 152 Ala. 46, 44 South. 670. Charge 6 is incomplete and unintelligible. Charge 8 authorizes an acquittal although the jury might find from the evidence that defendant left the house in search of the deceased and for the purpose of engaging in a difficulty with him. Charge 9 fails to hypothesize honest belief on the part of the defendant that he was in imminent peril, and for this

reason (if for no other) was properly refused. *Wilson's Case*, 140 Ala. 43, 37 South. 93; *McClellan's Case*, 140 Ala. 99, 37 South. 239; *Jones' Case*,. 76. Ala. 8. Charge 10 is elliptical, besides being subject to the last criticism made of charge 9. Charge 11 is so patently bad as to require no pointing out of its defects in detail. Charge 12 is misleading and argumentative. Charge 13 is involved and confusing, and leaves out of view the phase of the evidence that defendant's purpose in leaving the house was to find deceased and engage in a re-encounter with him. Charge 14, viewed in the light of the evidence, needs no comment to expose its several vices. —*Watkins' Case*, 89 Ala. 82, 8 South. 134; *Reese's Case*, 135 Ala. 13, 33 South. 672; *Wilson's Case*, 140 Ala. 37 South. 93. Whether charge 15 states a correct proposition or not, it makes no pretense of being applicable to the case in hand, and is therefore misleading. It is, moreover, mere argument. Again, there is no evidence tending to show that the killing was done in repelling a trespass either in or upon the dwelling. The law only requires the exclusion of reasonable hypotheses of guilt; hence charges 16 and 18 are bad.—*Crawford's Case*, 112 Ala. 1, 26, 21 South. 214. Charge 17, besides being otherwise vicious, is a mere argument. Charge 19 is abstract, and, besides, assumes that defendant was defending his son's house. It is conceded by appellant's counsel that charge 20 is incomplete and lacking in clearness. Charges 21 and 23 are disapproved by our later decisions. —*Amos' Case*, 123 Ala. 50, 26 South. 524; *Rodgers' Case*, 117 Ala. 15, 22 South. 666; *Shirley's Case*, 144 Ala. 35, 42, 40 South. 269. Charges 22 and 24 are abstract. Charge 25 pretermits consideration of the testimony tending to show that defendant was seeking deceased. For the reasons given, the several charges requested by the defendant were properly refused.

Whether or not defendant was carrying a gun for witness McKay, of itself, was irrelevant to any issue in the case; but subsequent evidence shows that testimony of that fact was offered merely as preliminary to proof of a threat against the Pruitts, made by defendant in the same conversation, to the effect that "if those Pruitts bothered him he would kill some of them." The threat is not inadmissible on the ground of indefiniteness as to the persons against whom made; the deceased being one of the class referred to. The same may be said as to objections to the testimony of witness Wilkerson, and shows that the court committed no reversible error in admitting the testimony.

No effort was made by the state to show that deceased bore a good character. After it had been proved, on cross-examination of witness McKay, that deceased bore the reputation of being a dangerous and bloodthirsty man, the court committed no error in not permitting defendant to prove admissions, made by deceased, in respect to his lying in wait for a man named Stewart, and that he went to Stewart's house to kill him.

Nor did the court err in sustaining the objection of the state to the question propounded to the witness Throckmorton. The court was not advised as to what the expected answer would be, and the question was susceptible of an answer that would have been wholly immaterial.—*Ross' Case,* 139 Ala. 144, 36 South. 718.

Whether or not the defendant was drunk on the particular occasion was relevant and material; hence no error was committed in allowing testimony tending to show that fact.

Even if it were incompetent for witness Tom Pruitt to testify that, while he (defendant), Hubert Montgomery, and Montgomery's wife were walking along the road that evening, just after the homicide was committed, going to defendant's house, neither Hubert nor his wife

told him that Dave Pruitt had been killed, it was, under the evidence, competent for him to testify that the defendant said nothing about it, and the question, calling for competent evidence, was not subpect to the general objection made thereto.

For the errors pointed out, the judgment of conviction is reversed, and the cause remanded.

Reversed and remanded.

SIMPSON, ANDERSON, McCLELLAN, MAYFIELD, and SAYRE, JJ., concur. DENSON, J., dissents.