150 So. 172

## EVERS v. STATE.

### 5 Div. 904.

Court of Appeals of Alabama.

June 30, 1933.

Rehearing Denied Sept. 12, 1933.

See, also, 24 Ala. App. 55, 129 So. 785.

Jas. W. Strother, of Dadeville, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The indictment charged appellant with murder in the first degree, in that he unlawfully and with malice aforethought killed Jesse Pearson by shooting him with a gun or pistol. The trial resulted in the conviction of appellant of manslaughter in the first degree, and his punishment was fixed by the jury at forty-two months' imprisonment. Whereupon the court duly and legally sentenced him to imprisonment in the penitentiary for the term stated. From the judgment of conviction pronounced and entered, this appeal was taken.

The evidence discloses without dispute or conflict that this appellant is a white man and that Jesse Pearson, the deceased named in the indictment, was a negro.

The evidence without conflict also tends to show that Jesse Pearson, the deceased named in the indictment, was killed, upon the occasion and at the time complained of, by having been shot through the neck with a pistol. Thus the corpus delicti is established.

538

In this case there is no evidence tending to show that the killing was the result of a difficulty between the deceased and the person who fired the fatal shot; and, as we see it, there is but one question involved in this case, and that question is the identity of the person who did the killing.

As a rule in homicide cases, numerous questions are presented for decision. Most frequently the question of self-defense is involved, and in many instances, under defendant's plea, self-defense, justification, or facts tending to mitigate the punishment or to excuse the accused entirely must be determined. But in the instant case we are not called upon, under the evidence, or issues, to pass upon any of these points of decision; for here the undisputed evidence tends to show conclusively that the homicide complained of was unlawful and that the perpetrator is guilty of one of the degrees of unlawful homicide.

The state contends, and offered evidence of numerous witnesses, which tended to show, that this appellant was the person who fired the fatal shot. The only witness upon the trial who testified he saw the killing was state witness Tommy Chambliss. Among other things he said: "I knew Jesse Pearson in his life time; I was with him on Sunday, February 17, 1929, he was shot that day; I was present at the time of the shooting; * * * I was in the car with Jessie, Mr. Evers got to the place first, we passed them when we got there; Mr. Evers had already stopped; Mr. Evers was in the car and the other two men were with him; as we passed some of them throwed up their hand for us to stop, I stopped quick as I could. We were not about even with them at the time we stopped we run by them, I stopped pretty close behind his car and he got out; * * * he came up to the car, me and Jesse were sitting in the car, Mr. Evers came up to the car, there wasn't anybody with him, when he came to the car my car was headed in the direction of Dadeville, when Mr. Evers came to the car he asked us what we were hunting, liquor? Jessie spoke up and told him, 'Yes, sir,' he asked how much, Jessie said a pint or a quart, any amount we can get and he said, heh, heh, and reached in his overalls and said, 'this enough,' and Jessie said, 'please don't shoot us, you know us.' He said, I say, damn it, is this enough and he caught hold of Jessie's hand and pulled him over and shot him; when he shot him Jessie just fell back in the corner. When I seen him come out with that gun I got out the car; I was driving our car, I was sitting under the steering wheel; when Jessie Pearson got shot I run, I run right out the road towards Dadeville, towards my home, I finally got to Dadeville, it was about night when I got there, about six o'clock, I reckon, I don't know exactly what time it was when the shooting took place,

some where about dinner time, I reckon." In addition to the foregoing, the evidence disclosed that this appellant and his brother and another party carried the wounded man, the deceased named in the indictment, from the place of shooting to the office of Dr. Banks in Dadeville, where in the presence of numerous persons, including appellant, the wounded man, after full and proper predicate, stated to his mother, "Mama, I am shot and I am going to die; I cannot live and the man shot me for nothing." Mr. Evers (appellant) was in the room and Jesse pointed him out and said, "That is the man that shot me." Several witnesses for the state testified in substance to the foregoing. The state also offered several witnesses who testified in substance that this appellant at the point of a pistol told them to swear that the wounded man said to them that Tommy Chambliss was the man who shot him, and that appellant said, "All of you come up here, and he says, if you all don't swear Tommy Chambliss shot Jesse, I will kill every damn one of you; he had a pistol in his hand at the time." There was other evidence of an incriminating nature offered upon the trial of this case in the court below.

Appellant denied that he killed deceased, and testified: "I didn't shoot Jesse Pearson and I had nothing to do with it. I don't know who did shoot him. No, I didn't know Jesse Pearson before that time, I don't think I did. I don't remember Tommy Chambliss, I don't remember him before that time. I did not go up to the car and ask them what they wanted. I did not ask them what they wanted and they did not tell me they wanted some whiskey, and I did not ask them how much. I did not pull out my pistol and curse them and ask them 'Is that enough,' I certainly did not. I did not catch hold of Jesse Pearson's left hand with my left hand and pull him out over the side of the car and shoot him in the neck. I did not do that. I went to the right hand side of the car. Jesse was sitting on the right hand side leaning over with his shoulder kinder hanging out, his neck." He also denied the testimony of the several state witnesses to the effect that he had threatened them with a pistol, etc., and told them to say that Jesse Pearson had said that Tommy Chambliss shot him. Defendant offered several witnesses whose testimony tended to corroborate the evidence given by him.

The foregoing conflict in the evidence made a jury question; the material inquiry, as stated, being the identity of the person who shot Jesse Pearson about midday on Sunday from the effect of which he died on the following Tuesday. The jury decided against appellant, as did the jury upon a former trial of this case.

On this appeal appellant insists the court erred in its rulings upon the admission of evidence.

There was no error in the several rulings of the court in allowing testimony as to the intoxicated condition of this appellant. The transaction was continuous from the time the deceased was shot until he was taken to the doctor's office. The evidence was without dispute that the accused had been drinking prior to, at the time of, and shortly after the shooting took place. Wright v. State, 21 Ala. App. 391, 108 So. 641; Beaird v. State, 215 Ala. 27, 109 So. 161; Weems v. State, 222 Ala. 346, 132 So. 711; Tyler v. State, 207 Ala. 129, 92 So. 478.

The question as to whether appellant had a pistol when arrested by the sheriff some time after the shooting was not admissible. This was no part of the res gestæ. The exceptions reserved to the court's rulings in this connection cannot be sustained.

If there was any error in the court's ruling in allowing the state to show that no charges were preferred against Tommy Chambliss for the killing in question, it was cured by the action of the court in excluding this evidence from the jury. Lumpkin v. State, 19 Ala. App. 273, 97 So. 171; Mosely v. State, 19 Ala. App. 335, 97 So. 247; Carden v. State, 203 Ala. 173, 82 So. 423.

The charge refused to defendant was properly refused. The charge as written was not applicable to this case as circumstantial evidence was not relied upon for a conviction. There was direct and positive evidence which tended to show that this appellant was the person who fired the fatal shot, and, as stated, this was the material question for the jury to determine from the evidence.

We discover no reversible error in any ruling of the court. The evidence adduced was ample to support the verdict of the jury and to sustain the judgment of conviction pronounced and entered.

The record is regular and without error. The judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.