18 So.2d 412

**SHIKLES v. STATE.**

**8 Div. 350.**

Court of Appeals of Alabama.

March 21, 1944.

Rehearing Denied May 9, 1944.

S. A. Lynne, of Decatur, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

SIMPSON, Judge.

The defendant shot Council Taylor on March 12, 1942, culminating an argument over a division line between the property of defendant and Taylor's father. The two pistol bullets causing death entered the region of the spine, penetrated the body and emerged under the arm. One bullet punctured the spinal column.

About a "week or nine days" before he died on April 14, 1942, Taylor made a statement detailing his version of the affair.

As predicate for the admission of this statement, the witness testified that deceased said "he was going to die and he had no hope of recovery. He believed that he was about to die. * * * The first thing he said was that he felt like he was going to die and he wanted to make a statement, and for me to take it down; he wanted to swear to it. Those were the words as near as I (the witness) recall them. * * * He was there in bed wounded; shots in his back and appeared to be very weak and frail. Talked in a low voice, apparently a very sick man. Said he thought he was going to die and he told me that before he died he wanted to make a statement and sent for me to come to his house. * * * He said he knew he was in a dying condition and he didn't feel like there was any hope for him, and he wanted to make a statement and wanted it sworn to, wanted to swear to it. * * * Council Taylor on that occasion never did say he had no hope of life and that he wouldn't get well, but he did say he felt like he was going to die."

The contention is made that it does not appear that the statements were made under the consciousness of imminent death, and, of consequence, error prevailed in admitting them.

■ No hard and fast general rule can be laid down to control the admissibility of dying declarations. The circumstances of each case must be considered—the condition of the person, as well as what he says in regard to approaching dissolution. Lewis v. State, 231 Ala. 211, 164 So. 92; Parker v. State, 165 Ala. 1, 8, 51 So. 260, 262. The Parker case approvingly quotes Professor Wigmore on the subject: "No rule can be laid down. The circumstances of each case will show whether the requisite consciousness existed; and it is a poor policy to disturb the ruling of the trial judge upon the meaning of these circumstances." 2 Wigmore on Evidence, p. 1809, § 1442.

■ Nor is it an indispensable prerequisite to admissibility that declarant should state in haec verba that he is in extremis, that there is no hope of life, and that death is imminent, just so the judicial mind is fairly convinced by legally sufficient evidence after a careful consideration of all the circumstances that at the time such declarations were made such was the conviction of deceased. Lewis v. State,

supra; Collins v. State, 27 Ala.App. 499, 176 So. 219.

All the attendant circumstances tending to show the declarant's state of mind, as his statements, nature of the wounds, his weakness, etc., may be looked to by the trial court in considering the predicate for admissibility. Ragland v. State, 238 Ala. 587, 192 So. 498. And that declarant was under a sense of impending dissolution may be inferred from his apparent condition, such as the nature of his injuries and evident danger. Wilson v. State, 28 Ala.App. 496, 188 So. 274.

■ Nor is admissibility controlled by the length of the interval between the declarations and death, but by the declarant's state of mind and his conviction that death is imminent. Titus v. State, 117 Ala. 16, 23 So. 77; Sowell v. State, 30 Ala.App. 18, 199 So. 900.

■ These principles are well known but are restated in deference to the urgent insistence of counsel that no proper predicate was laid for admitting the dying statements of deceased, and as sustaining authority for our contrary conclusion. Under our decisions, as well as on the general principles laid down, we think the trial court should be affirmed in admitting the statements. See also Ross v. State, 233 Ala. 201, 171 So. 246, where our Supreme Court ruled such evidence admissible upon the predicational statement of deceased that "I am just about gone" or "I am half dead"; and Pattillo v. State, 245 Ala. 192, 16 So.2d 303, where deceased stated, "Doctor, he has got me, hasn't he?"

■ Likewise nontenable do we regard the insistence that the statement of deceased in his dying declaration, "Shikles shot me in the back without any cause at all. I didn't say anything or do anything to him," should have been excluded as an illegal conclusion. A dying declaration by the victim of a homicide that the act was without provocation, or words of similar import, has been approved as the statement of a collective fact and not a mere conclusion. 30 C.J. p. 275, § 511. Noteworthy sustaining authorities are Sullivan v. State, 102 Ala. 135, 142, 15 So. 264, 48 Am.St.Rep. 22, where the approved statement was, "Jim Sullivan cut me—he cut me for nothing—I never did anything to him", and Clemmons v. State, 22 Ala. App. 418, 421, 116 So. 910, where the declarant said the defendant "hit me in the

head with a rock or brick without cause. I did not cause or try to cause a fight with Pat Clemmons (defendant) in any way."

The other insistences of error relate to the refusal of the trial court of certain special charges requested by defendant. We discuss them in the order arranged by counsel in brief and argument.

■ Refused charge 1 has been approved (Gilbert v. State, 20 Ala.App. 565, 104 So. 45), but it is nothing more than an instruction on reasonable doubt (Elmore v. State, 92 Ala. 51, 9 So. 600). The trial court charged at length, and correctly, upon this phase of the law, and we think, and hold, the charge was fairly and substantially covered. Under the rule now prevailing, a reversal for its refusal would be unwarranted. Code 1940, Title 7, Section 273.

■ Moreover, as instantly applicable, we regard the charge as misleading. It stipulates that if the jurors' minds "are left in such a state of uncertainty that you (they) cannot say beyond a reasonable doubt that defendant is guilty of the offense charged," etc. Here the "offense charged" was murder in the first degree and the instruction has a tendency to mislead the jury to disregard consideration of the lesser degrees of homicide. The instruction first received approval in the Elmore case, supra, but there the "offense charged" was not homicide and a different situation probably existed to render it proper.

■ Refused charge 8 appears to have been approved in Brown v. State, 20 Ala. App. 39, 100 So. 616, but we now perceive a strikingly misleading tendency in the portion, "and that he (defendant) was free from fault in bringing it on," seeming to convey the meaning that defendant was free from fault, which under the facts could not be affirmatively charged.

■ Then, the concluding portion, "and if the jury from the evidence has a reasonable doubt on this proposition," etc., is confusing in that the charge submits to the jury, not one proposition, but several issues for determination.

■ Refused charge 15 is defective in that it pretermits the defendant's duty to retreat, etc., if such were possible without increasing his peril. From the evidence in the record, it could not be said, as a matter of law, that the defendant was relieved of such duty, so the charge was deficient

in this regard. True, he was on his own land or on the boundary line of same, but, as announced in Lee v. State, 92 Ala. 15, 19, 9 So. 407, 408, 25 Am.St.Rep. 17: "Nothing has been found in the books to indicate that a man when upon his own land is to be regarded as at bay so as to be under no duty to yield further to an assailant, unless he is in his house, or within the curtilage or space usually occupied and used for the purposes of the house. When he is elsewhere upon his own land, the reasons which excuse him from withdrawing from the place which is to him as his castle and fortress do not apply." See also our case of Williams v. State, 26 Ala.App. 531, 163 So. 663, of like import, the facts of which (here pertinent) are quite similar.

■ Refused charge 17, other misleading tendencies aside, pretermits the defendant's freedom from fault.

■ Refusal of charge 21 (approved in Davis v. State, 214 Ala. 273, 107 So. 737) was without prejudice to this defendant, inasmuch as the conviction was of manslaughter, not murder. Error cannot be rested upon the refusal of instructions relating to other offenses or degrees of which he was not convicted. Ward v. State, 153 Ala. 9, 45 So. 221; Parker v. State, 7 Ala.App. 9, 60 So. 995. Refusal of charge 10 can be affirmed as correct for the same reason, without considering other asserted defects.

■ Charge 22 ignores the doctrine of retreat and freedom from fault. It was therefore correctly refused. Gaston v. State, 161 Ala. 37, 49 So. 876; Cox v. State, 19 Ala.App. 205, 96 So. 83; McCarty v. State, 22 Ala.App. 62, 112 So. 184; Newman v. State, 25 Ala.App. 526, 149 So. 724. As indicated in the foregoing cases, the charge would be—and has been—held to be good, where the evidence is undisputed that defendant was free from fault and not duty-bound to retreat (as in Chaney v. State, 178 Ala. 44, 69 So. 604, 606), but here no such situation appears. This is a case where refusal of the charge was correct as ruled by the authorities, supra.

■ Refused charge 26 is involved, confusing, and argumentative. Similar charges have been repeatedly condemned. Diamond v. State, 15 Ala.App. 33, 39, 72 So. 558; Jones v. State, 181 Ala. 63, 61 So. 434; Shelton v. State, 144 Ala. 106, 42 So. 30.

428

The remaining refused charges were either inapposite, incorrect, or fairly and substantially covered in the oral and given charges, so special comment regarding them seems unnecessary.

We have tendered that studious consideration to the case which its gravity and importance demand. It was well tried. The defendant was ably represented by his counsel both in the court below and on appeal. In our opinion, the trial was free of any error substantially prejudicial to him, and perforce we must and do order an affirmance of the judgment.

Affirmed.

On Rehearing.

PER CURIAM.

█ Appellant insists that the evidence was free of contrary inferences and undisputed that he shot deceased when he (defendant) was within the curtilage of his own dwelling; that therefore charge 15 should have been given.

We have again carefully scrutinized the evidence and are clear to the view that the record presents no such status. Mattie Wilson, for one, testified, "Shikles was on the line joining him and my brother and Shikles got in behind him down there and halloed at him and then shot him." This, in itself, should suffice as a response to appellant's contention. But then there is other evidence, as instance in the dying declaration of deceased, which, to our minds, placed in dispute the question of the locus in quo of the fatal affray. Therefore, the court could not eliminate from the jury's consideration the proposition of retreat, and charge 15 was correctly refused.

█ Appellant also asks us to deal with the court's admitting in evidence the threats of defendant against Jim Taylor (father of deceased and owner of the adjoining land, concerning which the boundary dispute arose) and his family. These statements necessarily included the deceased and were referable to him also. Threats of this character have been approved as admissible. Montgomery v. State, 160 Ala. 7, 24, 49 So. 902; 30 C.J. 191, § 418.

█ Likewise, do we regard as untenable the argument for error in such rulings of the trial court as the following:

" 'What did he (deceased) appear to be doing?'

"Witness answered: 'Appeared to be coming with a weapon.'

"The solicitor objected to it as invading the province of the jury. The court sustained the objection and the defendant reserved an exception to the ruling of the court.

"He had his right hand in his shirt. I mean under his shirt and through the opening of the shirt.

"Thereupon he was asked by his attorney the following question: 'Where was his left hand?'

"Witness answered: 'Out about like that, like he was fixing to take hold of something.'

"The solicitor objected to the answer. The court sustained the objection and defendant reserved an exception to the ruling of the court."

These statements were not of facts nor shorthand rendering of facts and were not admissible under the rule of such cases. They were conclusions of the witness, invasive of the province of the jury and clearly inadmissible.

We feel duty bound to conclude that no prejudicial error appears, so the application for rehearing must be overruled.

Rehearing denied.