36 So.2d 564

**LEDBETTER et al. v. STATE.**

**7 Div. 936.**

Court of Appeals of Alabama.
June 15, 1948.

Rehearing Denied June 29, 1948.

A. A. Carmichael, Atty. Gen., and Hugh F. Cuverhouse, Asst. Atty. Gen., for the State.

37

Robinson & Parris, of Gadsden, for appellants.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

**CARR, Judge.**

George and Horace Ledbetter, brothers, were separately indicted for murder in the first degree. The person alleged to have been killed was Ralph Simmons, a brother-in-law of George. By agreement the two cases were consolidated for trial by the same jury, with the understanding that separate verdicts should be returned. Each defendant was convicted of manslaughter in the first degree. The appeals are here on one record.

In brief of counsel for appellants is contained a fair and accurate delineation of the tendencies of the evidence:

"The evidence presented by the State tended to show that on the afternoon of September 7, 1946 the Defendant George Ledbetter had some trouble with his wife, Minnie Lee Ledbetter, at the home of A. L. Ledbetter, where George and Minnie Lee lived; that after this trouble had occurred Minnie Lee Ledbetter went to the home of T. C. Finley, Finley being her father; that about 5:30 P.M. Minnie Lee and Ralph Simmons, the deceased. who was a brother-in-law to Minnie Lee, left the Finley home and went to the store of one Allison, who was also a Justice of the Peace; that Minnie Lee and Ralph Simmons arrived at the Allison store just at closing time which was 6 P.M.; that at Minnie Lee's request Mr. Allison issued a peace warrant against the Defendant George Ledbetter; that George Ledbetter entered the store after the warrant was issued and before Minnie Lee and Ralph Simmons departed; that George Ledbetter threatened to kill both Minnie Lee Ledbetter and Ralph Simmons in their presence in the Allison store; that Minnie Lee and Ralph Simmons returned to the Finley home and entered into a room at the back part of the house; that after Simmons returned T. C. Finley took his pistol and sat on his front porch for a few minutes while Ralph Simmons, Minnie Lee Ledbetter and her mother Mrs. T. C. Finley remained inside the house; that after T.

C. Finley had been sitting on his front porch for a few minutes with his pistol in his front trouser pocket, the defendants George and Horace Ledbetter approached the Finley home from the direction of Springville, came up the walk toward the Finley porch; that as they approached T. C. Finley made the statement to George Ledbetter 'Don't you come in here George'; that thereupon the Defendant George Ledbetter attacked T. C. Finley by hitting him with his fist; that George Ledbetter and T. C. Finley engaged in a short scuffle during which Finley succeeded in getting the pistol out of his pocket; that Horace Ledbetter joined George in the affray and twisted the pistol out of Finley's hand while George held Finley on the porch floor; that while this scuffle was in progress the deceased, Ralph Simmons, came out of the house onto the porch and knocked George Ledbetter off of Finley with a chair; that thereupon George Ledbetter grabbed Ralph Simmons by the shoulders and told Horace Ledbetter to 'Shoot him, shoot him'; that thereupon Horace Ledbetter did shoot the Deceased; that some five or ten minutes after the shooting of Simmons George Ledbetter entered into the house and attacked Minnie Lee by beating and stomping her, and also Mrs. T. C. Finley, hitting her and knocking her unconscious; that George Ledbetter then took the pistol from Horace and started after T. C. Finley shooting at him three times with the pistol as he ran off the porch and around the Finley house; that Simmons was removed from the Finley home to St. Vincents Hospital in Birmingham where he died at about 11 P.M. on the same day.

"The evidence presented by the appellants showed that George Ledbetter saw his wife, Minnie Lee, and Ralph Simmons in the town of Springville after they had secured the warrant; that shortly after seeing Ralph and Minnie Lee George met his brother Horace on a street corner in Springville and requested he go with him to the Finley home for the purpose of getting Minnie Lee and coming back to Springville to a movie; that on reaching the Finley home, George, while standing in the Finley yard, called into the house and re-

quested Minnie Lee to come out to see him; that while calling he approached the edge of the porch where T. C. Finley was standing; that T. C. Finley took a pistol from his pocket and hit George Ledbetter over the head with the pistol; that in defending himself from this attack George Ledbetter engaged T. C. Finley in a scuffle; that Horace Ledbetter joined in the scuffle; that while all three men were grappling on the porch floor the pistol with which Finley had struck George Ledbetter was discharged, the bullet striking Ralph Simmons and causing his death; that neither of the Defendants knew who was holding the pistol at the time it fired; that the discharge of the pistol was accidental; that after the accidental discharge of the pistol the scuffle between the two Defendants and T. C. Finley ended abruptly whereupon Finley ran off the end of the front porch and around his house; that some two or three minutes after the scuffle ended George Ledbetter carried the pistol to the edge of the Finley yard and fired twice into the ground in order to empty the pistol. The testimony of Dr. McGruder, the physician who tended the deceased at St. Vincents Hospital was to the effect that the bullet struck the deceased just below his right nipple; that the path of the bullet was not probed but that the bullet was discovered at a point on the back side of deceased's body some six inches lower than the point of entry showing that the bullet had ranged downward."

Section 61, Title 30, Code 1940 provides: "In case two or more persons are tried jointly, the solicitor shall strike one and each defendant shall have the right to strike off one name and they shall continue thus to strike off names until only twelve remain and the twelve thus selected shall be the jury charged with the trial of the defendants." The trial judge adhered to this prescribed procedure.

In brief counsel for appellants makes this insistence: "A summons was issued for a juror George W. Martin. This summons was served on George W. Matthews. The Defendants objected to striking from the jury list furnished them because it did not contain the name of George W. Martin nor of George W. Matthews. The Court overruled the Defendants' objection and required them to strike from the list furnished. This action of the Court was error since it placed the Defendants on trial with less than the number of jurors ordered by the Court for the trial of the case."

With reference to this matter the court made the following statement: "Now then, gentlemen, this situation has arisen here. On the jury card that was drawn it was George W. Martin, and a summons was issued for George W. Martin. The juror's card gives his address as Pell City, and his occupation as a barber. The Sheriff states here in open court that they made every effort to find George W. Martin in Pell City, and couldn't find one there. The summons was handed by the Sheriff to George W. Matthews, who is a barber at Pell City, and it is evident to me that that is not the man. I am excusing him on that. You may have an objection to that if you want it."

The trial judge concluded that the wrong person had been summoned. There appears nothing to the contrary. Clearly, the appellants were not due to have the name of a person included on the striking list who had not been drawn and placed there according to law. Section 67, Title 30, Code 1940 provides that a continuance should not be granted when there appear irregularities comparable to those of instant concern.

The court did not abuse his discretion in excusing the deputy sheriff from the operation of the rule which had been invoked for the witnesses. Wright v. State, 1 Ala.App. 124, 55 So. 931; Henderson v. State, 1 Ala.App. 154, 55 So. 437.

Whether or not the appellants were under the influence of intoxicants on the occasion of the homicide related to a matter of pertinent inquiry. Montgomery v. State, 160 Ala. 7, 49 So. 902; Evers v. State, 25 Ala.App. 537, 150 So. 172. The insistence that the witnesses were not qualified to give opinions to this effect is untenable. May v. State, 167 Ala. 36, 52 So. 602; Pierson v. State, 31 Ala.App. 452, 18 So.2d 578.

Mrs. T. C. Finley testified that the appellant George Ledbetter hit her with his fist and the lick "knocked her out." It appears that the court was not apprised of the exact time of this occurrence with reference to the main event. When it was made known that it happened several minutes after the shooting, the judge sustained the objections and stated: "That is out, gentlemen, what this witness said this defendant said to her and what he did to her."

Counsel urges in brief that the trial court did not fully instruct the jury concerning this testimony. In other words his exclusion of it was not coupled with sufficient emphasis. In the absence of a motion requesting the judge to give more emphatic instruction, we will not charge error for this failure so to do.

A witness may answer that a person, whom he had an opportunity to observe, appeared to be conscious. Orr v. State, 225 Ala. 642, 144 So. 867; Disheroon et al. v. Brock, 213 Ala. 637, 105 So. 899.

The deceased received a pistol bullet wound which entered the front breast and lodged against the second lumbar vertebra. Very soon after the shooting he was carried to a hospital in Birmingham, Alabama, where he died about four hours after he received the infliction. On the journey in an automobile from Springville to Birmingham he was accompanied by his brother-in-law, Benny Finley. The State was allowed to introduce in evidence, as a dying declaration, a statement the deceased made to Mr. Finley on the indicated trip. The insistence was made by the objections interposed that a proper or sufficient predicate was not laid for the introduction of the statement. Pertinent to this the witness answered: "Well, as we first started off, he looked me up in the face and he says, 'Benny', says 'I can't live the shape I'm in', and he says, 'will you please see after my wife and baby.'"

The following authorities sustain our view that there was no error in allowing the introduction of the declaration against the grounds stated in the objections. Fowler v. State, 236 Ala. 87, 181 So. 266; Carmichael v. State, 197 Ala.

185, 72 So. 405; Parker v. State, 165 Ala. 1, 51 So. 260; Walker v. State, 139 Ala. 56, 35 So. 1011; Shikles v. State, 31 Ala. App. 423, 18 So.2d 412; Gettings v. State, 32 Ala.App. 644, 29 So.2d 677; Collins v. State, 27 Ala.App. 499, 176 So. 219; Parker v. State, 24 Ala.App. 72, 130 So. 525.

On cross examination of a State's witness appellants' counsel asked this question: "While you were living there you were convicted and served a term in the penitentiary, didn't you?" The court sustained the solicitor's objection to the query.

It is, of course, a legal truism that for the purpose of attacking the credibility of a witness it may be shown that he has been convicted prior to the time of testifying of a crime involving moral turpitude. Title 7, Section 434, Code 1940.

It should be kept in mind that the provisions of the above section relate solely to crimes involving moral turpitude.

"Moral turpitude signifies an inherent quality of baseness, vileness, depravity." Gillman v. State, 165 Ala. 135, 51 So. 722.

"Moral turpitude implies something immoral in itself, regardless of the fact whether it is punishable by law. The doing of the act itself, and not its prohibition by statute, fixes the moral turpitude." Fort v. Brinkley, 87 Ark. 400, 112 S.W. 1084, 1085.

See also, Pippin v. State, 197 Ala. 613, 73 So. 340; Marshall v. State, 207 Ala. 566, 93 So. 471, 25 A.L.R. 338.

The instant question, as framed, sought information as to whether or not (a) the witness had been convicted, (b) served a term in the penitentiary. Therefore an affirmative answer could have included any offense for the conviction of which a service in the penitentiary was imposed.

In Fondren v. State, 204 Ala. 451, 86 So. 71, 72, the Supreme Court held: "It was permissible for the state to ask the witness Fondren if he had not served a term in the penitentiary."

This court, in Moore v. State, 12 Ala. App.243, 67 So. 789, 790, held that it was error to disallow answer to this question: "State whether or not you have been con-

victed in this court and sent to the penitentiary for a term."

In Whitman v. State, 19 Ala.App. 526, 98 So. 695, 696, this court observed: "It is permissible to ask a witness if he ever served a term in the penitentiary."

Thus it is clearly evident that we are confronted with a conflict in the authorities.

The Supreme Court in the case of Marshall v. State, supra, held that it was error to show by a witness that he had been convicted for manufacturing whiskey; such offense not involving moral turpitude, notwithstanding the fact that the legislature had declared the offense to be a felony. See also, Baugh v. State, 215 Ala. 619, 112 So. 157; Lakey v. State, 206 Ala. 180, 89 So. 605; Hill v. State, 27 Ala.App. 160, 167 So. 606.

■ It is clearly apparent that to ask a witness whether he had ever served a term in the penitentiary would have the effect of soliciting a reply which might include a conviction for manufacturing whiskey which is not a crime involving moral turpitude. It follows, therefore, that the question should have been so framed as to include a specification of the nature of the offense. Of course, this specific requirement would not have been necessary if the court had been otherwise apprised of the nature of the crime concerning which inquiry was made.

By disregarding this suggested rule an affirmative answer could be brought into the evidence, and at the same time the admission may not affect the credibility of the witness under the provisions of the statute.

If our interpretations of the decisions are correct, it is evident that the holding in the case of Fondren v. State, supra, is by necessary implication overruled by the case of Marshall v. State, supra.

We here declare that on this point the cases of Whitman v. State, supra, and Moore v. State, supra, are specifically overruled.

In passing, it should be noted that the following cases are also out of harmony with the view we now express. Wingate v. State, 1 Ala.App. 40, 55 So. 953; Roden v. State, 3 Ala.App. 197, 58 So. 71; Stapler v. State, 22 Ala.App. 83, 112 So. 461.

The case of Lyles v. State, 23 Ala.App. 135, 122 So. 611, seems to be in accord with our instant conclusion.

We are, of course, not unmindful of the provisions of Section 95, Title 13, Code 1940, which provides in part: "The decisions of the supreme court shall govern the holdings and decisions of the court of appeals."

We have encountered considerable difficulty in bringing ourselves to a decision of the instant question, because of the declarations in the opinion in the rather recent case of Johnson v. State, 242 Ala. 278, 5 So.2d 632, 635. We refer to this: "On cross-examination the defendant was asked by the solicitor had he been previously convicted in that court and sent to the penitentiary, to which he answered in the affirmative. Defendant objected 'to the form of the question'. The objection was overruled without error."

It appears evident that the author of the opinion placed some stress and significance on insufficiency of the grounds to the objections. This is not only indicated by the content of the quoted portion of the opinion, but it is supported by the original record of the appeal which we have before us. Here we find:

" 'Q. Have you been convicted in this court and sent to the State penitentiary before you were arrested in this case?'

"Thereupon the defendant objected to the form of the question as not being proper."

The court overruled the objection and an exception was taken. There was an affirmative reply.

It is our considered opinion that the Johnson case is distinguishable from the case at bar on the question under review, and therefore is without precedential force and effect.

■ We will forego a treatment of several other questions relating to the rulings of the court during the progress of the

introduction of the evidence. Some of these involve only elementary rules of evidence, others are not sufficiently presented because of failure to state any grounds in support of the objections. Freeman **v.** State, 21 Ala.App. 433, 109 So. 172.

We come finally to consider the written charges which were refused to appellant. They are unnumbered. For convenience of reference we have numbered them from 1 to 22 inclusive.

A review of the statement of the tendencies of the evidence leads to the unquestioned conclusion that the general affirmative charge as to each defendant was refused with propriety.

Charge number 3 was approved by this court in the following cases: Mills v. State, 1 Ala.App. 76, 55 So. 331; Estes v. State, 18 Ala.App. 606, 93 So. 217; Kilgore v. State, 19 Ala.App. 181, 95 So. 906; Brown v. State, 20 Ala.App. 39, 100 So. 616; Jones v. State, 20 Ala.App. 96, 101 So. 67; Bufford v. State, 20 Ala.App. 197, 101 So. 287; Gilbert v. State, 20 Ala.App. 565, 104 So. 45.

In the case of Crews v. State, 22 Ala. App. 564, 117 So. 801, this court certified an abstract proposition to the Supreme Court. The inquiry related to the instant charge. In response; 218 Ala. 145, 117 So. 801, Justice Somerville, writing for the court, said in part: "We are of the opinion that the charge in question is, upon its face, subject to objection, and may be properly refused. We think, also, it could be given without error."

Our appellate courts have condemned the charge in subsequent opinions. Hurston v. State, 235 Ala. 213, 178 So. 223; Ivory v. State, 237 Ala. 344, 186 So. 460; Knight v. State, 22 Ala.App. 557, 117 So. 804.

Charge 4 was properly refused. Campbell v. State, 13 Ala.App. 70, 69 So. 322; Matthews v. State, 16 Ala.App. 514, 79 So. 507; Washington v. State, 18 Ala. App. 82, 89 So. 103; Anderson v. State, 18 Ala.App. 429, 93 So. 68; Wilson v. State, 32 Ala.App. 591, 28 So.2d 646.

In the recent case of Brown v. State, 33 Ala.App. 97, 31 So.2d 670, we held that a charge similar to number 5, and its duplicate, number 12, in the instant case was refused without error. The authorities in support of our view are there set out.

Charges 8 and 14 are identical. The convictions of the defendants in the case at bar did not depend on the testimony of a "single witness." The charge, therefore, is predicated on an abstract premise. Gregory v. State, 140 Ala. 16, 37 So. 259; Crumley v. State, 18 Ala. App. 105, 89 So. 847; Estes v. State, 18 Ala.App. 606, 93 So. 217.

See Brown v. State, supra, for our discussion of charge number 11.

Written instruction number 15 singles out the testimony of certain witnesses and places undue emphasis on disputed facts. Ray v. State, 248 Ala. 425, 27 So.2d 872; Alabama Dry Dock & Shipbuilding Co. v. Bates, Ala.App., 30 So.2d 273; Jennings v. State, 15 Ala.App. 116, 72 So. 690; Pounds v. State, 15 Ala.App. 223, 73 So. 127.

Refused charge number 16 is not predicated on the evidence. Edwards v. State, 205 Ala. 160, 87 So. 179; Minor v. State, 15 Ala.App. 556, 74 So. 98.

Charges 17 and 19 relate to the offense of murder. The verdict of the jury makes a review of them unnecessary. Brake v. State, 8 Ala.App. 98, 63 So. 11; Shikles v. State, 31 Ala.App. 423, 18 So. 2d 412.

We are not authorized to disturb the judgment of the lower court in his action in denying the motion for a new trial.

The case was tried below with evident care. There appear no errors which could in any way inure to the substantial injury of either of the appellants.

It is ordered that as to each appellant the judgment at nisi prius is affirmed.

Affirmed.