# Ludlow v. The State.

## Murder.

(Decided June 30, 1907. 47 South. 321.)

1. *Jury; Venire; Quashing.*—The fact that a venire for the trial of a capital case which was served upon the defendant did not state the residence of the jurors, furnishes no grounds for quashing the same.

2. *Evidence; Res Gestae; Hearsay.*—Statements made by the deceased about half an hour after he was shot, and when he was a quarter or half a mile distant from the place of the shooting, were not part of the res gestae, and were inadmissible as hearsay.

3. *Witnesses; Credibility; Interest; Relationship.*—It is proper to show on cross examination that a witness was related to defendant as tending to show relationship and affecting credibility.

4. *Homicide; Self Defense.*—Charges setting up self defense are properly refused which assume that defendant was free from fault in bringing on the difficulty where there was evidence from which the jury might conclude that he was not free from fault.

APPEAL from Perry Circuit Court.

Heard before Hon. B. M. MILLER.

Haywood Ludlow was convicted of murder in the second degree, and he appeals. Affirmed.

The defendant was indicted for the killing of Will White by shooting him with a pistol. The evidence for the state tended to show that about sundown one evening Will White came to a house belonging to the Southern Railway Company, of two rooms, in one of which lived one Jimerson and in the other the defendant; that White came to the room occupied by Jimerson,

and asked for a match, when defendant came to the door dividing the rooms and asked White if he had broken into his house the night before and whipped Roxy, and White replied that he had, and that there was no help for it, whereupon defendant shot him, and as he turned shot again; and that White ran off in the fields, where he was later found. The evidence for the defendant tended to show that White came to the house with a long, keen, one-blade knife open in his hands, and after getting his match went around to defendant's room, where there were some words between them, when one shot was fired from defendant's room, and White ran off. There was evidence of threats made by White against defendant that were communicated to defendant. The defendant offered to show that, when Will White was found, he remarked that the only regret he had was that Haywood had beaten him to it. On cross-examination the defendant was asked if Roxy Williams was his wife, and, after objection thereto was overruled, answered that she was not. He was then asked if Roxy was kin to him, and after objection was overruled, answered that she was not. The defendant further testified that his wife was not with him, and had not been with him for three or four years.

The following charges were refused to the defendant: "(1) If the jury believe from the evidence that deceased had several times attempted to kill defendant, had threatened to kill him, had besieged defendant in his own house the night before the shooting, made threats again next morning that he would kill defedant if it was the last act of his life, that in the evening of the killing deceased came to defendant's house with an open knife in his hand, that he approached defendant's door with an open knife, and started into the house, and defendant shot deceased, then defendant should be

acquitted. (2) The court charges the jury that if the jury believe from the evidence that defendant was in his own house, or within the curtilage or estate usually occupied and used for the purpose of the house, when the fatal shot was fired, that there was danger of death or great bodily harm, either actual or apparent, and that defendant believed that he was in danger, or in such peril to life or limb, and shot under such belief, then the jury must acquit defendant. (3) If the jury believe from all the evidence that, for three weeks immediately preceding the shooting, deceased on four or five different occasions met defendant at private houses, and on the railroad, and at suppers, and in the public road in and around Hamburg, that at all such places a difficulty with defendant was precipitated by deceased, that he was armed and threatened to shoot defendant, that defendant was in all of said cases aware of such threats, that on the night before the killing defendant was in his house on the railroad about 9 o'clock, and deceased, appeared at the door of defendant's house and tried to force his way into the house of defendant, cursed and abused and threatened to kill defendant, that he laid around the house and doors of defendant during the night, and was found near the house the next morning, that he spent part of said day at defendant's house, and then and there threatened to kill defendant if it was the last act of his life, and came back in the evening, went immediately to defendant's door, and, upon attempting to enter the door with a knife in his hand and threats in his mouth, was shot by the defendant, then they must find for the defendant. (4) The court charges the jury that, if they believe from the evidence that defendant and Jim Peterson were placed in possession of the house occupied by them by the railroad, then the house and curtilage thereof was

[Ludlow v. The State.]

the place and refuge of defendant, whether actually occupied by him or not; and if they believe that if, after making threats with pistols and guns for three successive weeks, besieging defendant all the night before the shooting, making threats during the day, the deceased was seen coming back to defendant's house with a knife in his hand, that he went to the back door of the house of defendant, and there had an altercation with defendant, and in such altercation the defendant shot deceased, then defendant was in his own domicil, whether in his own room or that of Jim Peterson, said house was the house of refuge of this defendant, and upon slight demonstration or overt act he could shoot in his own defense, and is not guilty."

J. H. STEWART, for appellant. No brief came to the Reporter.

ALEXANDER M. GARBER, Attorney-General, for the State.

ANDERSON, J.—The failure of the copy of the venire, served on the defendant, to state the residence of the jurors, furnished no grounds for quashing same. —White v. State, 136 Ala. 58, 34 South. 177.

What Will White, the deceased, said after he was found about a half hour after the shooting and from a quarter to a half mile from the place of the difficulty, was properly excluded by the trial court. It was pure hearsay evidence, was not a part of the res gestæ, and no predicate was shown to render it admissible as a dying declaration.

The witness Roxy Williams had testified in behalf of the defendant, and the questions objected to, which were propounded on cross-examination to the defendant,

sought evidence establishing his relationship with said witness, and which would tend to affect her credibility as a witness.

The charges requested by the defendant were properly refused. If not otherwise bad, they pretermitted the defendant's freedom from fault in provoking or encouraging the difficulty, when there was evidence that defendant got after the deceased about breaking into the house and whipping Roxy.

The judgment of the circuit court is affirmed.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.