# Brake *v.* The State.

### *Manslaughter.*

(Decided June 5, 1913. 63 South. 11.)

1. *Homicide; Self-Defense; Duty to Retreat.*—As regards the issue of self-defense, the street in front of a building in which one is employed is not a place from which the law excuses retreat if it can be done in safety.

2. *Same; Belief in Danger.*—Charges predicated on a bona fide belief in danger are bad if they fail to hypothesize the reasonableness of the belief.

3. *Same; Burden of Proof.*—The burden is not on the state to show that there was a reasonable mode of escape open to the defendant which he could have taken without endangering his safety.

4. *Same; Instruction as to Degree; Harmless Error.*—Where the jury returned a verdict of manslaughter in the first degree, charges given dealing with murder were harmless to defendant if erroneous.

APPEAL from Morgan Law and Equity Court.

Heard before HON. THOMAS W. WERT.

John Brake was convicted of manslaughter in the first degree, and appeals. Affirmed.

Defendant was charged with killing Ernest Brothers, the state's theory being that defendant was an employe at Anders' livery stable, and that as Brothers ran out of the stable he was closely pursued by defendant, who shot at him once, and then shot twice more in rapid

succession, one bullet entering the right shoulder blade, passing through the body, and coming out in front of the left shoulder.  It appears that Brothers and Brake were in the livery stable a few moments before the shooting, and that Brothers was cursing Brake; that they came out of the stable, Brothers in front and Brake following, and that Brothers stopped with his right side to Brake, and was cursing when Brake fired, but that Brothers was going slowly away from Brake when he fell.  The evidence for defendant tended to show threats made by Brothers against Brake because of the fact that Brake had informed on the mother-in-law of Brothers for selling whisky.  The defendant's version was that Brothers came to the stable, and that he did not know Brothers, but that as soon as he got into the stable he commenced cursing defendant, and struck him a time or two, telling him that he had told on his mother-in-law about selling whisky, and that he had come to town to get him, and intended to do it before he left, and about that time his sister-in-law drove up to the front of the stable, and called him out, and after talking to her a while, he stated to her that he did not intend to leave until he had fixed things so that defendant would not appear against his mother-in law, whereupon he turned his right side to defendant, put his hand in his right hip pocket, and began to draw out a pistol, whereupon defendant fired the shot that killed him.

The following charges, were given for the state: "No threats unaccompanied with acts which threaten the life or limb of the slayer will justify a felonious homi· cide.  In a case of homicide, no mere words used by deceased towards defendant, however insulting, will reduce the degree of homicide to less than murder. Malice may be presumed from the use of a deadly weapon."

The other charges given for the state have reference to murder in the first degree.

The following charges were refused to defendant:

"(B) The court charges the jury that under the evidence in this case the defendant had a right to be at the stable, and if you find from the evidence that deceased went to the stable for the purpose of engaging in a difficulty or altercation with the defendant and for the purpose of taking his life or inflicting upon him grievous bodily harm, and if the jury further find from the evidence that at the time defendant shot deceased, the facts and circumstances were such as to produce in the mind of a reasonable man the belief that it was the intention of deceased to engage in a difficulty with defendant, and inflict upon him death or grievous bodily harm, and if defendant fired the shot that killed deceased, under these circumstances and under this belief, you should acquit defendant."

D is similar to B, with the additional hypothesis of threats against defendant, with the communication of these threats to defendant.

"(F) The court charges the jury that defendant had a right to testify as a witness in his own behalf, and if the jury are reasonably satisfied from all the evidence that defendant had good cause to believe that Brothers would carry into execution the threats made against him, and that the facts and circumstances were such as to lead a reasonable man into believing that he would carry into execution these threats, then the jury should acquit on the ground of self-defense."

(H) Similar to D.

(L) Asserts the doctrine of self-defense without hypothesizing duty to retreat.

"(R) If you find from the evidence that defendant was employed at the livery stable when the difficulty

occurred, then I charge you that he had a right to be and remain in said stable and premises surrounding said stable, and I charge you that these premises included the platform or driveway and street and sidewalk in front of said stable; and if you find that defendant was in the street in front of said stable at the time the shot was fired, and if you further find that defendant fired the shot that killed deceased under such facts and circumstances as would make it apparent to a reasonable man that it was necessary to shoot deceased in order to protect himself from death or grievous bodily harm, then you should find defendant not guilty.

"(S) Under the law defendant was under no duty to retreat from the barn, nor from the space in front of the barn used in connection with the livery stable business therein conducted, and in entering in and going from the barn."

(E) Affirmative charge against finding of defendant guilty of manslaughter in the first degree.

"(G) Under the evidence in this case the defendant did not enter into the difficulty willingly."

(K) General affirmative charge.

(N) Same.

"(M) If defendant shot deceased under a bona fide belief that he was in danger of suffering grievous bodily harm at the hands of Brothers, then it would be immaterial whether such danger existed or not."

"(P) The court charges the jury that the burden of proof is upon the state to show that defendant had a reasonable mode of escape, which was open to him, and which he could have taken without endangering his safety."

TIDWELL & SAMPLE and CALLAHAN & HARRIS, for appellant.   The same reasoning in law that would pro-

tect a defendant while in or in the open way of the place of business where he was employed, would also protect him while in the street in front thereof.—*Christian v. The State,* 96 Ala. 92; *Brinkley v. State,* 89 Ala. 34; *Cheney v. State,* 55 South. 801; *Left v. State,* 56 South. 5; 2 L. R. A. (N. S.) 71. Counsel discuss other charges given and refused, but without further citation of authority.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

WALKER, P. J.—There was evidence tending to prove that when the fatal shot was fired the defendant was in a street in the town of Hartselle, in front of a livery stable in which he was an employe. That was not a place from which the law excused him from retreating if he could have done so in safety.—*Perry v. State,* 94 Ala. 25, 10 South. 650; *Lee v. State,* 92 Ala. 15, 9 South. 407, 25 Am. St. Rep. 17.

A number of the written charges requested by the defendant were faulty in that they ignored the inquiry as to his duty to retreat. The existence of such a fault in each of the charges B, D, F, H, L, R, and S justified the court in refusing to give them.

There being evidence in the case to support a finding that the defendant was guilty of manslaughter in the first degree, written charges E, G, K, and N were properly refused.

Charge M, requested by the defendant was properly refused because of its failure to hypothesize the reasonableness of the defendant's belief that he was in danger of suffering grievous bodily harm.—*Jackson v. State,* 78 Ala. 471.

The burden is not upon the state to prove that there was open to the defendant a reasonable mode of escape, which he could have taken without endangering his safety.—*Cleveland v. State,* 86 Ala. 1, 5 South. 426. It follows that charge P, requested by the defendant, was properly refused.

The remaining charges, which were refused to the defendant, were either unintelligible, or stated a proposition which was embraced in a charge given at his instance.

Charges dealing with the offense of murder, which were given at the instance of the state, need not be considered, as the defendant was convicted of manslaughter in the first degre.—*Bluett v. State,* 151 Ala. 41, 44 South. 84.

Obviously appellant has nothing to complain of in any of the charges given at the request of the state.

No reversible error is found in the record.

Affirmed.