196 So. 286

**CLACK v. STATE.**

**5 Div. 79.**

Court of Appeals of Alabama.
April 30, 1940.

Rehearing Denied May 21, 1940.

Gerald & Gerald, of Clanton, for appellant.

Thos. S. Lawson, Atty. Gen., and Willard McCall, Asst. Atty. Gen., for the State.

**BRICKEN, Presiding Judge.**

The appellant, defendant below, was indicted for the offense of murder in the second degree. Specifically, "that he unlawfully, and with malice aforethought, killed Carl Gore, by shooting him with a pistol, but without premeditation or deliberation," etc. Upon the trial the defendant was convicted of murder in the second degree, and his punishment was fixed at ten years' imprisonment in the penitentiary.

From the judgment of conviction, pronounced and entered, this appeal was taken.

The evidence adduced upon the trial, disclosed, without dispute, that on Sunday afternoon of December 18, 1938, this appellant shot Gore, the deceased named in the indictment, with a pistol, and that Gore died as a result of said wound thus inflicted.

Without dispute also it was shown, that the aforesaid killing happened in the home of the defendant in the presence of his aged mother, and other members of defendant's family, and also in the presence of Mrs. Bertha Gore, the divorced wife of deceased. These parties, it appears, were the only eye-witnesses to the killing, and each of them testified in behalf of the defendant.

Upon the trial below, and here, the defendant insists that he shot in self-defense and in defense of his home. He testified, and this without contradiction, that at the time in question he knew the deceased but slightly, that he had seen him two or three times only, and that he had never had any trouble, differences or difficulty with the deceased, and that as a consequence he entertained no bad feelings, ill will or animosity against him.

It appears from the evidence that on November 22, 1938, (barely a month before the homicide complained of was committed) the estranged and divorced wife of the deceased rented, from defendant, a small store house in which to live with her four small children; that said house was about 25 or 30 feet from the house where defendant lived with his family.

On or about 3 o'clock in the afternoon of the day of the killing, the deceased employed witness Mason Snyder, a taxi driver, to carry him from Clanton to where deceased's wife and children were living, which was about six miles from Clanton. Snyder testified he stopped once or twice on the way, and after they arrived at the home of deceased's wife and children, he left deceased there and did not wait for him.

Mrs. Gore testified, after deceased had been in her house a little while, she took her baby and went into the home of Mr. Clack, and stated: "I was not in Mr. Clack's house very long before Carl Gore came in, something like ten minutes."

All the testimony as to how the trouble started was to the effect that deceased approached the home of defendant in a very belligerent manner, using opprobrious and profane language, calling Mr. Clack, the defendant, a G— d—— double-crossing S.

of a b. and other epithets of like character, and repeated same several times, and said "G— d—— you come out here and talk to me." Whereupon, Mr. Clack stated: "I walked to the front window, * * * and I hollered and told him, I said: Carl you go on and get out there in the road, and catch a way to Clanton, and I will see you tomorrow, and talk to you when you are sober; * * * I saw him coming on that walkway by the window, he was saying you G— d—— double crossing s— of b. I will talk to you now, God damn you now." Defendant was at that time in a rear room of his house drinking a cup of coffee. The front door to defendant's home was closed and also fastened on the inside by a bolt or button. All the testimony shows that deceased crashed and broke open the front door and entered defendant's home in a belligerent and threatening manner. When the defendant heard deceased crash open the front door of his home, he, defendant, got up and went into the room, where defendant's aged mother was screaming with fright. Mrs. Gore's baby was crying and she (Mrs. Gore) testified she was greatly excited, and hollered, and begged her husband to go on out of the house. Defendant testified that on his way to the front room where his mother was, and into which the deceased forcibly entered, as above stated, he secured his pistol which was hanging on a wall in his home on a nail and under some clothes; "that as I got that gun my mother was screaming and when I got to the door just after the front door crashed he (deceased) was right there in my house coming toward me with his left hand up, and right hand down by his side, I couldn't see whether he had any weapon or not, he had his hand kinder behind him, it was his right hand side, and his hand was behind him when I fired one shot only. He was about three or four feet from me when I fired. * * * I shot one time that afternoon, there were more cartridges in my gun." .

The deceased, as disclosed by the testimony, was about six feet, or more, tall; and a younger man than defendant who weighed about 145 to 150 pounds, and that at the time he (defendant) had a bad heart and lungs and a crippled leg, which caused him to walk with a limp.

Pending the trial several exceptions were reserved to the rulings of the court upon the admission of the testimony. Also to the action of the court in overruling and denying defendant's motion for a new trial.

The defendant undertook to show by State witness Snyder, the taxi driver, who carried the deceased to the place of the homicide, a short time prior to the shooting, that Gore, the deceased, had been drinking and was at that time under the influence of intoxicating liquor. The court stated: "Well suppose he was just bad drunk, would that license any man to shoot him," and declined to let the witness testify about Gore's being under the influence of intoxicating liquor. To which ruling the defendant excepted. This ruling was error, and in this connection we need not elaborate upon the principle of law, for upon a trial under an indictment charging second degree murder a question seeking to adduce evidence to the effect that the deceased was drinking, or intoxicated at or within a reasonable time before the killing was proper as shedding light on the act of the defendant, and also upon the nature and character of any assault or threat made upon him by the deceased. Ferguson v. State, 21 Ala.App. 116, 105 So. 435; Vinston v. State, 23 Ala.App. 51, 121 So. 698; Sandlin v. State, 25 Ala.App. 311, 146 So. 82. The fact that Mrs. Gore later testified: "Carl was drinking on that occasion; he was pretty full, but he could walk, and that, he had some whiskey with him at the time I left my home and went over to Mr. Clack's," would not render the former erroneous ruling of the court innocuous.

The defendant also undertook to prove by Mrs. Minnie Clack, that during the disturbance, ending in the death of deceased, her husband told her to go, and did send her to get the Sheriff. The evidence sought to be adduced was not only admissible and relevant as being a part of the res gestae, but also to shed light upon the material inquiry of defendant's intent and also to rebut the presumption of malice by the use of a deadly weapon. This testimony should have been admitted to the jury for its consideration and the court's rulings in declining to allow it were injurious error.

As insisted by appellant, "Upon a trial under an indictment charging murder in the second degree a question seeking to elicit the fact that during the difficulty terminating in the killing that the defendant, while in his own home, and while the deceased was on his premises outside the

house cursing the defendant and threatening him, that the defendant sent his wife to call the sheriff, was proper and should been allowed as such action was a part of the res gestae and tends to show state of mind of the defendant, and sheds light upon his action at the time." Campbell v. State, 133 Ala. 81, 31 So. 802, 91 Am.St.Rep. 17; Vinston v. State, 23 Ala.App. 51, 121 So. 698; Sandlin v. State, 25 Ala.App. 311, 146 So. 82; Laws v. State, 209 Ala. 174, 95 So. 819; Ingram v. State, 13 Ala.App. 147, 69 So. 976; Hardeman v. State, 14 Ala.App. 35, 70 So. 979; Dempsey v. State, 15 Ala. App. 199, 72 So. 773; Roan v. State, 225 Ala. 428, 143 So. 454.

■ Malice aforethought is an essential ingredient of the offense of murder in the first or second degree. It does not apply to the offense of manslaughter. In the case at bar, it affirmatively appears that the two principals in the homicide complained of were comparative strangers. The undisputed evidence discloses conclusively that no ill will, hard feelings, or animosity existed between the two men in question. There was no semblance of evidence upon the trial of this case, that the defendant in any manner, by word or by act, contributed to the situation which resulted in the difficulty wherein the deceased lost his life. The defendant was in his own home, surrounded by his own family consisting of an aged mother, his own wife, and other members. His home was forcibly invaded, by a larger and stronger man under the influence of intoxicating liquor, as the undisputed evidence discloses. The unauthorized and unwarranted forcible invasion of defendant's home by the deceased, after the opprobrious and profane language used by him immediately preceding such unlawful entrance, a larger and younger man than the defendant, and he being unquestionably under the influence of intoxicating liquor, his belligerent and threatening actions after having broken open the door and entered the home of defendant under circumstances above stated, as shown by the undisputed testimony, may, and naturally did, in the mind of defendant create the exigency and necessity for resort to such force as was necessary to protect his home, his family and himself. These questions of course were for the jury to determine under proper instructions as to the law governing such a situation. The defendant, under the law, had the right, in defense of the peace and security of his home, and of his family and himself, and for the purposes of prevention and defense to employ the necessary force to accomplish said purposes, even to the taking of the life of the infuriated aggressor. As stated, the defendant, and the inmates of the house at the time, were conclusively, as shown by the whole evidence, without any semblance of fault, they had not provoked or invited the invasion of the dwelling house, and had given no cause to the deceased for his lawless and ferocious conduct on the occasion as clearly and fully disclosed. The defendant, it would seem was justified in entertaining a reasonable belief in his mind that there was imminent and impending peril to him and to his family and home. It has been held, in effect, and advisedly so, the law regards with great jealousy and vigilance the peace and security of the dwelling. A trespass upon it is more than a trespass upon property; it is the same as a trespass upon a person. Crawford v. State, 112 Ala. 1, 21 So. 214; Harris v. State, 96 Ala. 24, 11 So. 255.

These principles of law, and numerous others of like import, should have been considered by the trial court in acting upon defendant's motion for a new trial. For the errors indicated, and for the refusal of the court to grant defendant's motion for a new trial, the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.